**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND**

**CIVIL ACTION No. 21-81-DLB**

**CARTER NURSING and REHABILITATION, LLC and
CARTER NURSING and REHABILITATION HOLDINGS, LLC                    PLAINTIFFS**

**v.                              MEMORANDUM OPINION AND ORDER**

**DAVID WRIGHT, as Administrator of the
ESTATE OF HELEN WRIGHT                                             DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.   INTRODUCTION

This matter is before the Court upon Defendant's Motion to Dismiss (Doc. # 5) and Plaintiffs' Motion to Enforce Arbitration Agreement and Enjoin Defendant (Doc. # 8). The motions have been fully briefed by the parties and for the reasons set forth herein, the Court finds that dismissal is not warranted and that the arbitration agreement which forms the basis of this lawsuit is legal, binding, and enforceable.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Helen Wright's residency at Carter Nursing and Rehabilitation in Grayson, Kentucky from August 30, 2019, until November 18, 2020.

On May 2, 2010, Helen Wright executed a "General Power of Attorney" appointing her son, David Wright, as her attorney-in-fact. This instrument was notarized and recorded at the Office of the Lawrence County Clerk. (Doc. # 1-3). The parties do not dispute the validity of this instrument.

1

Subsequently, as part of the Carter Nursing and Rehabilitation facility's admissions process, David Wright executed an Admissions Agreement, which includes an Arbitration Agreement, which provides in pertinent part: "Facility and Resident agree that any legal dispute, controversy, demand or claim (hereinafter collectively referred to as "claim" or "claims") arising out of, or relating to Resident's admission to facility, or any service, diagnosis, or care of the Resident provided by facility including the applicability of this Arbitration Agreement and the validity thereof, shall be resolved exclusively by binding arbitration." (Doc. #1-1, p.9-10).  David Wright signed the agreement for Helen Wright on the signature line for "Resident or Responsible Party". *Id.* at p. 11.

The Admission Agreement defines "Responsible Party" as follows: "If the Resident so designates a Responsible Party, the Resident shall provide the Facility with a copy of a written agreement that authorizes such individual to … execute this Agreement on the Resident's behalf. A Responsible Party shall receive a copy of and execute this Agreement on behalf of the Resident."  *Id*. at p. 2.  According to Plaintiffs, Mr. Wright provided a copy of the Power of Attorney to the facility. (Doc. # 6, p. 3).  Defendant does not dispute this assertion of fact.

Helen Wright was discharged from Plaintiffs' facility on November 18, 2020. She passed away on January 31, 2021.

Defendant alleges that while at Carter Nursing and Rehabilitation, Helen Wright suffered physical and emotional injuries due to inadequate care, and her health and physical condition deteriorated beyond that caused by the normal aging process.

On October 5, 2021, Defendant filed in the Circuit Court of Carter County, Kentucky, Case No. 21-CI-00307, a negligence, medical negligence, corporate

negligence, and wrongful death action against thirteen defendants: Carter Nursing and Rehabilitation, LLC; Carter Nursing and Rehabilitation Holdings, LLC; 250 McDavid Blvd SNF Realty, LLC; 250 McDavid Blvd SNF Realty Holdings, LLC; Marx Development Corporation; Marx Development Group, LLC; David E. Marx; Majestic Management, LLC; Majestic Care of Columbus, LLC; AY Kentucky Operations Holdings, LLC; AY Kentucky Property Holdings, LLC; LTC Consulting Services, LLC; and Joe Brainard, in his capacity as Administrator of Carter Nursing and Rehabilitation.

On November 23, 2021, two of the thirteen defendants from the state court action filed this civil action, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity and asking this Court to find the arbitration agreement to be valid and enforceable, to compel Defendant to arbitrate the state court claims, and to enter an order enjoining the Defendant from pursuing his claims in state court.

Defendant seeks a dismissal of all claims alleged herein. He contends that this Court lacks subject-matter jurisdiction, that Plaintiffs failed to join an indispensable party, that the arbitration agreement is not enforceable and that the Court should not exercise its power to enjoin him from continuing the prosecution of the state court action.

Plaintiffs seek entry of an Order compelling Defendant to proceed to arbitration and, in addition, enjoining him from pursing his claims in state court.

**III.   ANALYSIS**

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception.' " *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Federal courts are courts of limited jurisdiction, and subject matter

3

jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010); 28 U.S.C. §§ 1331, 1332.

Neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

Defendant has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiffs in this action. Nor has Defendant challenged the amount in controversy. Rather, he contends that complete diversity of citizenship among the parties cannot be established because Joe Brainard, Administrator at the subject facility, named in his state complaint, but not in this action, is a Kentucky citizen and an indispensable party under Fed.R.Civ.P. 19. He maintains that Brainard's joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).  As such, he seeks dismissal of this case pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.

Yet, this Court and other courts within this District have consistently held that the nursing home administrators are not indispensable parties per Rule 19. As this Court explained in *GGNSC v. Hanley*, 2014 WL 1333204 (E.D. Ky. 2014), Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable"

refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether the administrators are indispensable is to determine whether they are "necessary". A party is deemed necessary under the Rule if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (i) as a practical matter, impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19.

Defendant's claims against the individual administrator and the Plaintiffs in this case are based on the same occurrence, to-wit, the alleged negligence that resulted in injury to Helen Wright. Further, the arbitration agreement governs claims against the corporate parties as well as the administrator. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, the administrator would face inconsistent procedural remedies. Accordingly,

the Court concludes that the administrator is not necessary party to the action.

However, that is not the end of the subject matter jurisdiction inquiry. As joinder would destroy diversity jurisdiction, the Court must also determine whether Brainard is an "indispensable" party. To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in his absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in his absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Defendant argues that he will not be afforded complete relief in the absence of the administrator in this action. He asserts that he will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case addressing joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Wright's'] decision to file a suit naming [Carter Nursing and Rehabilitation and the individual administrator] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers

6

that there is low risk that the state court will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Determining whether the dispute as it relates to Carter Nursing and Rehabilitation is subject to arbitration is a simple matter of contract interpretation and does not require the presence or input of the individual administrator. *Id.* The prejudice Defendant fears does not present the degree of prejudice necessary to support a conclusion that the administrator is an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, the administrator's status as an alleged joint tortfeasor is not dispositive of the Rule 19(b) inquiry. Indeed, the United States Supreme Court has explicitly rejected this theory as a *non sequitur*. *Temple v. Synthes Corp., LTD.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them).

Finally, although an adequate remedy exists in state court even if this Court were to dismiss the case. However, on balance, the factors do not dictate that the Court find the individual administrator an indispensable party. As such, the failure to join him does not warrant dismissal.

The undersigned is not alone in so finding. In *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421 (W.D. Ky., 2013), Judge Heyburn found that subject matter

jurisdiction existed even without the administrator defendant. He analyzed the Rule 19 factors, namely: "(1) the extent to which a judgment rendered in [the administrator's] absence might prejudice [the administrator] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in [the administrator's] absence would be adequate; and (4) whether Golden Gate would have an adequate remedy if the action were dismissed for non-joinder." *Id.* at *3. He concluded that the duplication of proceedings is not a disqualifying factor, the risk of prejudice to Defendant was minimal, and an administrator's status as a joint tortfeasor does not make them an indispensable party. *Id.* at *3-*4.

Similarly, in *Brookdale Senior Living, Inc. v. Stacy*, 2014 WL 2807524 (E.D. Ky., 2014), Judge Caldwell analyzed Rule 19 and applied the Sixth Circuit's analysis in *Paine Webber*, as well as other nursing home matters from the district to conclude that "a nursing-home administrator is not an indispensable party when she is joined in the underlying state court action." *Id.* at *6. Chief Judge Danny Reeves' opinion in *Brookdale Senior Living, Inc. v. Caudill*, 2014 WL 3420783 (E.D. Ky., 2014) is equally persuasive. "After balancing the factors of Rule 19(b) and considering the Sixth Circuit's rejection of nearly-identical arguments, the Court finds that the state court administrators are not indispensable parties." *Id.*

Case law is clear from the District Courts of Kentucky, the Sixth Circuit, and the Supreme Court that this court has proper subject matter jurisdiction and the parties before the court are properly diverse.

8

Nor does the Supreme Court's rationale in *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), tip the scales in Defendant's favor with regard to jurisdiction, or, more precisely, the lack thereof. In *Vaden*, Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. Yet Discover Bank believed these claims were preempted by federal law and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal question jurisdiction exists based on the underlying state-court suit. *Id.* at 62.

Defendant urges that the logic of *Vaden* applies with equal force in cases resting on diversity jurisdiction. He argues that the Court should "look through" this case and determine whether it would have jurisdiction over the state suit, which includes the non-diverse nursing home administrator. However, this argument was explicitly rejected by Judge Caldwell in *Brookdale.* She noted that the Supreme Court did not include diversity jurisdiction in its holding, despite acknowledging that diversity jurisdiction exists as a separate method for bring a claim pursuant to the Federal Arbitration Act. *Brookdale*, 27 F.Supp.3d at 782.

Accordingly, this Court will decline to "look through" the present action to determine whether it would have diversity over the state-law suit.

Therefore, this Court finds the requirements of diversity jurisdiction have been met and this Court has proper subject matter jurisdiction over this case.

Defendant also seeks dismissal pursuant to Fed. R. Civ. P 12 (b)(6) for failure to state a claim upon which relief may be granted. Specifically, he contends that arbitration agreement is invalid and unenforceable.

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Kentucky Supreme Court has held that the FAA applies to arbitration agreements between long-term care facilities in Kentucky and their residents. *Ping v. Beverly Enterprises*, 376 S.W.3d 581, 589-90 (Ky. 2012).  Once prima facie evidence of the arbitration agreement is presented, the burden shifts from the party seeking to enforce the agreement to the party seeking to avoid the agreement. *Louisville Peterbilt, Inc. v. Cox* 132 S.W.3d 850, 857 (Ky. 2004) (citing *Valley Constr. Co., Inc. v. Perry Host Mgmt. Co.,* 796 S.W.2d 365, 368 (Ky. App. 1990)). However, "[t]he party seeking to avoid the arbitration agreement has a **heavy** burden." *Id*. (emphasis added).   The burden is onerous due to the "strong federal policy in favor of arbitration." *Hurley v. Deutsche Bank Trust Co. Ams.,* 610 F.3d 334, 338 (6th Cir.2010) (*quoting Albert M. Higley Co. v. N/S Corp.,* 445 F.3d 861, 863 (6th Cir.2006)). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Defendant maintains that his signature on the Admissions Agreement is not valid. He argues that because he did not indicate that he was signing the agreement in his capacity as Helen Wright's power of attorney, the agreement is not enforceable.  Notably,

10

Defendant does not assert that he did not sign the agreement; nor does he suggest that he lacked the authority to do so or was somehow coerced or tricked into executing the agreement.  His only contention is that because there is no indication in what capacity he was signing the agreement, his signature, and the agreement itself, are void.

First, the Court notes that under the line to which Defendant affixed his signature, is the term "Responsible Party".  Therefore, Defendant's argument that his signature did not indicate his capacity is without merit.  He ignores the definition of "Responsible Party" in the agreement itself in favor of a fiction.

Further, Kentucky law is clear: A signatory on a contract is not required to explicitly state they are acting as an attorney-in-fact for the principal of a durable power of attorney. *Cambridge Place Group, LLC v. Mundy*, 617 S.W.3d 838, 841 (Ky. App. 2021).

Defendant urgers that *Cambridge* supports his argument. The Court disagrees. In *Cambridge*, the Kentucky Court of Appeals held that an arbitration agreement signed by a resident's spouse was invalid because she specifically wrote "wife" above a line entitled "Legal Representative Capacity (i.e., guardian, spouse, child, Attorney-in Fact, etc.)." The court reasoned that by writing "wife" next to her signature, defendant made an "affirmative avowal" that she was not signing pursuant to a power of attorney but signing only in her limited capacity as the resident's spouse. *Id.* at 841.

The issue in *Cambridge* was not the signer's silence but rather her affirmative avowal that she was acting in a specific capacity. In her capacity as wife, defendant was authorized to make limited decisions on behalf of her husband; however, the pre-dispute arbitration agreement was outside that scope. *Id.* Accordingly, the court found that there was not a valid agreement to arbitrate.

Such is not the case here. Defendant did not write "son" or "child" next to his signature. He did not "affirmatively avow" in which capacity he was signing. As such, *Cambridge* is inapposite.

Notably, the *Cambridge* court specifically cited an analogous, but unpublished, decision, *Kindred Nursing Centers Ltd. Partnership v. Butler*, No. 2013-CA-000880-MR, 2014 WL 3722083 (Ky. App. Jul. 25, 2014), for the axiomatic proposition that "a signature of an individual can signify a vast array of legal relationships[,]" and absent an indication of the capacity under which a signature was executed, the parties were bound by the capacity in which the agreement was signed." *Id.*  In other words, Defendant's signature, absent an "affirmative avowal" is presumed to be as Helen Wright's "Responsible Party." To suggest otherwise would subvert the very language of the agreement.

Defendant also attempts to argue that his wrongful death claim is not subject to arbitration. This Court rejected an identical argument in *Golden Gate National Senior Care v. Addington*, 2015 WL 1526135 (Ky. 2015), holding that requirement that all wrongful death beneficiaries sign the arbitration agreement violated the FAA. "Because it is impossible to identify all possible wrongful death claimants at the time an arbitration agreement is signed and the resident is alive, the *Ping* holding would effectively nullify arbitration in the wrongful death context, which is precluded by the FAA." *Id.* at *8.

Having found that Defendant must submit his claims to arbitration, the question remains whether this Court should enjoin him from pursuing his parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding in Carter Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate,

12

it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling him to submit to arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum, including state court. Otherwise, he would be permitted to circumvent his arbitration agreement and in doing so, circumvent this Court's judgment that he be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with his pending state court action.

A valid and binding arbitration agreement was executed. Therefore, this matter must be referred to arbitration.

## IV.    CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** as follows**:**

(1)    Defendant's Motion to Dismiss [Docket No. 5] be **OVERRULED**;

(2)    Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No.

8] is **GRANTED**;

(3) Defendant shall prosecute all of his claims arising out of Helen Wright's residency at Carter Nursing and Rehabilitation Center in Grayson, Kentucky in accordance with the terms of the arbitration agreement;

(4) This matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court; and

(5) This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award.

This 17th day of August 2022.

Signed By:
*David L. Bunning*  *DB*
United States District Judge